**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. **17-20651** CR-SCOLA /TORRES

18 U.S.C. § 371
18 U.S.C. §§ 1343, 1346
18 U.S.C. § 1503
18 U.S.C. § 2



FILED by __HB__ D.C.

SEP 2 1 2017

STEVEN M. LARIMORE
CLERK U S DIST CT
S D OF FLA - MIAMI

UNITED STATES OF AMERICA,

v.

**[1] CHRISTOPHER V. CICCIONE, II,**
**[2] JOSE BAYRON PIEDRAHITA-CEBALLOS, a/k/a "Cacheton," a/k/a "Montanero,"**
**[3] JUAN CARLOS VELASCO CANO, a/k/a "Cabezon,"**

        **Defendants.**

_____/

## INDICTMENT

The Grand Jury charges that:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### Department of Homeland Security

1.      The United States Department of Homeland Security (DHS) is a federal agency under the Executive Branch of the United States government.  DHS is charged with administering and enforcing various federal laws, including narcotics trafficking, border security, immigration, and customs.

2.      United States Immigration and Customs Enforcement (ICE) is an investigative agency within DHS.  ICE enforces federal laws governing border control, customs, trade, and immigration to promote homeland security and public safety.

1

3.      Homeland Security Investigations (HSI) is a sub-agency within ICE and its agents are responsible for investigating various federal crimes, including, but not limited to, immigration, narcotics, and financial crimes.

## The Defendants

4.      At all times relevant to this Indictment, Defendant [1] CHRISTOPHER V. CICCIONE, II, was an HSI Special Agent and a federal law enforcement officer working in Miami, Florida. CICCIONE began his federal service in 2001 with the United States Customs Service, which was eventually absorbed into DHS.

5.      As an HSI Special Agent, CICCIONE had the authority to investigate violations of federal law, including, but not limited to, immigration, narcotics, and financial crimes.  In this professional capacity, CICCIONE also had unique access to, and relationships with, other federal officials and their offices, including the United States Department of State, the Drug Enforcement Administration (DEA), and other divisions within DHS.

6.      Part of CICCIONE's responsibilities in Miami included developing and handling confidential human sources of information.

7.      As a federal law enforcement officer, CICCIONE owed a fiduciary duty to the United States and its citizens to perform the duties and responsibilities of his position honestly and free from corrupt influence.

8.      Defendant [2] JOSE BAYRON PIEDRAHITA CEBALLOS is a Colombian national who was indicted on June 20, 1996 in the Southern District of Florida in a Fourth Superseding Indictment in the case of the *United States of America v. Blas Antonio Gonzalez, et. al.* (Indictment #93-470).  The Indictment charged PIEDRAHITA with participating in the Cali Cartel's

2

international drug trafficking racketeering enterprise.  Indictment #93-470 was prosecuted by the United States Attorney's Office for the Southern District of Florida.

9.      Based on Indictment #93-470, an arrest warrant was issued for PIEDRAHITA; however, PIEDRAHITA remained a fugitive on these charges from the time he was indicted on June 20, 1996, through October 21, 2011, when Indictment #93-470 was dismissed.

10.     Defendant [3] JUAN CARLOS VELASCO is a Colombian national who is an associate of PIEDRAHITA and former HSI confidential source.  CICCIONE developed and handled VELASCO as a confidential source.

### Operation Cornerstone

11.     Indictment #93-470 was one of several indictments resulting from "Operation Cornerstone," a joint investigation initiated in 1991 by the United States Customs Service and the DEA into the criminal activities of the Cali Cartel, including, among other allegations, the importation of multi-ton amounts of cocaine into the United States.  The indictments alleged that the Cali Cartel was a racketeering enterprise that used a defined hierarchy of leaders, attorneys, managers, and operators, and paid frequent, regular bribes to a number of politicians and military and police officials in Colombia.

12.     A series of HSI and DEA Special Agents investigated Operation Cornerstone from 1991, to 2011, and the United States Attorney's Office for the Southern District of Florida prosecuted the case.

## COUNT ONE
### Conspiracy to Defraud the United States, to Commit Honest Services Fraud, and to Obstruct Justice
### (Title 18, <u>United States Code</u>, Section 371)

13.     Paragraphs 1 through 12 of the General Allegations section of this Indictment are re-alleged and incorporated as though fully set forth herein.

14.     Beginning at least as early as in and around February 24, 2010, the exact date being unknown to the Grand Jury, and continuing through on or about October 28, 2011, within the Southern District of Florida and elsewhere, the defendants,

> **[1] CHRISTOPHER V. CICCIONE, II,**
> **[2] JOSE BAYRON PIEDRAHITA-CEBALLOS, a/k/a "Cacheton," a/k/a "Montanero,"**
> **[3] JUAN CARLOS VELASCO CANO, a/k/a "Cabezon,"**

did knowingly and willfully combine, conspire, confederate, and agree with each other and other people, both known and unknown to the Grand Jury, to:

(1) defraud the United States of the honest and faithful services of CICCIONE and to interfere with its lawful governmental functions by deceit, craft, and trickery; and

(2) commit offenses against the United States specifically,

a.      To knowingly devise and intend to devise a scheme and artifice to defraud and deprive the citizens of the United States of their right to the honest services of a public official; that is, to deprive the citizens of the United States of the honest services of CICCIONE, a federal law enforcement officer with HSI, through bribery, in violation of Title 18, <u>United States Code</u>, Sections 1343, and 1346; and

c.      To corruptly influence, obstruct, and impede and endeavor to influence, obstruct, and impede the due administration of justice in *United States v. Blas Antonio Gonzalez, et. al.*, Indictment #93-470, in the United States District Court for the Southern District of Florida, by

4

using a series of materially false statements, representations, and omissions about the investigation to persuade and attempt to persuade the United States Attorney's Office to dismiss the indictment, in violation of Title 18, United States Code, Section 1503.

### Purpose of the Conspiracy

15.     The purpose of the conspiracy was for the defendants to use CICCIONE'S official position to cause Indictment #93-470 against PIEDRAHITA to be dismissed and to benefit and enrich each other through bribery.

### Manner & Means of the Conspiracy

16.     The manner and means through which the defendants carried out the conspiracy included, but were not limited to, the following:

(a)     PIEDRAHITA and VELASCO offered and gave, and CICCIONE solicited and accepted, things of value, that is, among other things, cash; an expensive meal at a restaurant in Bogota, Colombia; a party at a Marriott hotel in Bogota, Colombia; liquor; and prepaid prostitutes.

(b)     CICCIONE, in his official position as an HSI Special Agent, falsified official records and lied to his supervisors and the United States Attorney's Office to cause Indictment #93-470 to be dismissed against PIEDRAHITA, and to obtain official authorization for PIEDRAHITA to enter into the United States.

17.     VELASCO served as an intermediary between PIEDRAHITA and CICCIONE, arranged for a meeting in Bogota, Colombia, received confidential information from CICCIONE about himself and others, and facilitated communication among members of the conspiracy.

18.     PIEDRAHITA used his personal assistants, A.G. and I.M., to communicate with CICCIONE, booked and paid for rooms at the Marriott hotel in Bogota from December 6, through December 9, 2010, and obtained the services of prostitutes for CICCIONE's benefit.

19.     CICCIONE used his official position as an HSI Special Agent to influence and attempt to influence officials within the United States Department of State to grant PIEDRAHITA a visa to enter the United States by falsely stating that PIEDRAHITA's indictment was being dismissed based on his cooperation, because he was "never fully identified," and because "no arrest warrant was ever issued...."

20.     CICCIONE used his official position as an HSI Special Agent to influence and attempt to influence officials at DHS to obtain a "Significant Public Benefit Parole" for PIEDRAHITA and his family to temporarily enter the United States by falsely claiming that PIEDRAHITA had no criminal record and "[n]o records of criminal activity were located in any data bases."

21.     CICCIONE caused and attempted to cause the dismissal of criminal charges against PIEDRAHITA in Indictment #93-470 by:

    i.      falsely altering DHS records in the "TECS" system to show that PIEDRAHITA was a "previous suspect" of a "closed case" rather than an indicted fugitive, falsely writing that the indictment was "being dismissed" based on PIEDRAHITA'S cooperation, and altering the record's "Primary" code designation;

    ii.     drafting and sending a memorandum to his supervisors containing material misrepresentations and false statements about PIEDRAHITA, including representations that PIEDRAHITA was "never positively identified," an arrest warrant had not been issued, and "[a]ll investigative leads and attempts to identify" PIEDRAHITA were "exhausted" and it was "unlikely" that he would "ever be positively identified"; and

    iii.    corruptly influencing prosecutors in the United States Attorney's Office for the Southern District of Florida to dismiss Indictment #93-470 by presenting the false memorandum to the United States Attorney's Office for the Southern District of

Florida, repeatedly requesting dismissal based on material misrepresentations, false statements, and omissions, and falsely stating that other case agents concurred with his recommendation to dismiss.

### Overt Acts

In furtherance of the conspiracy and to achieve its objects, defendants performed the following overt acts, among others:

22.     On or about February 24, 2010, CICCIONE emailed Assistant United States Attorney B.K., with the United States Attorney's Office for the Eastern District of New York.  CICCIONE informed B.K. that, with the approval of Assistant United States Attorney E.M., CICCIONE would seek dismissal of PIEDRAHITA's indictment. B.K. responded that PIEDRAHITA's cooperation did not have "any real value."  CICCIONE omitted Southern District of Florida Assistant United States Attorney E.M. from his e-mail.

23.     On or about July 16, 2010, VELASCO informed PIEDRAHITA that he spoke to CICCIONE "last night" to ask about "the thing with my friend" and CICCIONE replied that he "already asked" and "we can't go around asking like that because they'll be wondering, 'what's going on?' But it will come through, brother. It will come through. And you'll be the first to know."

24.     On or about August 11, 2010, VELASCO informed PIEDRAHITA that CICCIONE called that morning and said that "they had been reviewing" PIEDRAHITA's "thing for seven weeks," and that they would call to confirm.  During that same call, VELASCO told PIEDRAHITA that CICCIONE "seemed bummed" because HSI Confidential Source SA-2771-MI "is one of those guys who gets paid for information" and "apparently he's not going to get any more information from the man."

25.    On or about September 22, 2010, CICCIONE altered PIEDRAHITA's TECS database record to falsely report that PIEDRAHITA was a former suspect of a closed investigation, rather than the subject of a current operation. CICCIONE added in the narrative section that PIEDRAHITA's case would be dismissed because it was "preextradition and the subject has and continues to cooperate."

26.    On or about October 21, 2010, VELASCO informed PIEDRAHITA, "He tells me that – that once he's done doing this favor for me…he's going to Washington…he told me, 'thank god I can do something for you two.'" VELASCO continued, "You should see what kind of man he is…I mean, he introduced me to his family." PIEDRAHITA responded, "Do you think that can be ready by November?" VELASCO stated, "He tells me 'there's a lot of jealousy and they might go screw you guys…you guys have to be smart' because it's not good for him or for us either." VELASCO later commented, "This man is very advantageous for me, dude."

27.    On or about November 1, 2010, VELASCO told PIEDRAHITA that he spoke to CICCIONE and HSI Confidential Source SA-222-MI was "naming names."

28.    On or about November 24, 2010, VELASCO told PIEDRAHITA that "I need you to send me a copy of your passport right now…" CICCIONE "and his boss are going to the State Department to authorize your thing. The visa and everything right away." Later in the conversation, VELASCO provided PIEDRAHITA with CICCIONE's government e-mail address. PIEDRAHITA stated that he would have "Astrid" send a copy of his passport to CICCIONE. VELASCO told PIEDRAHITA that CICCIONE was going to be transferred but wanted to help PIEDRAHITA with his "status" and was "fearful" because there are too many "frogs." VELASCO also told PIEDRAHITA, "Remember, we will be there from the 6th to the 9th." PIEDRAHITA responded, "Ok, at the Marriott." VELASCO stated, "He already has a reservation there…from

the 6th to the 9th." VELASCO also reminded PIEDRAHITA, "We have to pay with another currency."

29.     On or about November 24, 2010, PIEDRAHITA's assistant, A.G., e-mailed CICCIONE a photocopy of PIEDRAHITA's passport.  The copy of PIEDRAHITA's passport included PIEDRAHITA's full name, birth date, place of birth, and passport number.  PIEDRAHITA's passport also listed its issuance date as "February 8, 2008," in "Medellin" and included a photograph of PIEDRAHITA's face.

30.     On or about November 26, 2010, PIEDRAHITA told VELASCO that everything was "arranged" for the 6th and that there were "three divine women who are going to be there with us." PIEDRAHITA stated that he "picked the best," and "they sent them through a catalog." PIEDRAHITA also asked VELASCO, "Chris already has my paper?" VELASCO informed PIEDRAHITA that the "friend" is going with his bosses to take PIEDRAHITA's "paper to get approved." VELASCO informed PIEDRAHITA that "he tells me" that he needed PIEDRAHITA's passport because "they are going to go to Washington."

31.     On or about December 6, 2010, PIEDRAHITA told VELASCO, "Tell Chris I'm finishing up coordinating everything. Ok? For the deal tomorrow. That I'm here finishing up coordinating everything. Ok?" PIEDRAHITA also told VELASCO, "The pre-paid ones are coming later" and Chris "can make a request later." VELASCO told PIEDRAHITA that "there is one more friend" so they needed to "speak differently."

32.     On or about December 6, 2010, CICCIONE and HSI Special Agent A.A. traveled to Bogota, Colombia. CICCIONE and A.A. met with VELASCO, PIEDRAHITA and others at the Marriott Hotel in Bogota, Colombia.  The party and lodging for guests were paid by

PIEDRAHITA.  During the party, CICCIONE consumed alcoholic drinks and had sexual relations with a prostitute, which were paid for by PIEDRAHITA.

33.     On or about December 7, 2010, CICCIONE and A.A. attended dinner at a private room in Pesquera Jaramillo, an upscale restaurant in Bogota, Colombia.  Dinner attendees included PIEDRAHITA, VELASCO, a Colombian Army Colonel, a well-known Colombia pop music star, and several females.  PIEDRAHITA paid for the dinner.

34.     During this trip, CICCIONE received a cash bribe from PIEDRAHITA and VELASCO. In the nine months following his December 9, 2010 trip to Bogota, CICCIONE deposited, or caused to be deposited, $17,700 in cash and spent $10,166.80 in cash.  In the one year period prior to December 9, 2010, CICCIONE had only deposited $50 in cash.

35.     In addition to the cash deposits, CICCIONE made several cash payments following the Bogota trip.  On December 16, 2010, CICCIONE made a $2,000 payment toward the balance of his Chase credit card.

36.     On June 29, 2011, CICCIONE paid $1,077.22 in cash for a U-Haul rental.

37.     On July 30, 2011, CICCIONE paid $5,000 in cash as a down-payment for a new 2011 Jeep Wrangler.

38.     On August 1, 2011, CICCIONE paid $1,189.58 in cash for a U-Haul rental.

39.     On or about February 8, 2011, CICCIONE drafted and emailed a memorandum to Group Supervisor R.R. (R.R.) requesting dismissal of individuals from Indictment #93-470, including PIEDRAHITA (Dismissal Memo).  CICCIONE drafted the Dismissal Memo and falsely stated that "[a]ttempts to identify" PIEDRAHITA "failed to positively identify" him, and as a result, he was "never positively identified" and "arrest warrants were never issued."  CICCIONE's Dismissal Memo also stated that "[a]ll investigative leads and attempts to identify" PIEDRAHITA "have

been exhausted" and, since "no new information has been developed" "during" the "time-frame" of the last fifteen years, it is "unlikely that" PIEDRAHITA "will ever be positively identified."

40.     On or about February 17, 2011, R.R. instructed CICCIONE that the Dismissal Memo must state whether the dismissal is based on cooperation.

41.     On or about February 18, 2011, R.R. told CICCIONE that he could not state in the Dismissal Memo that a defendant was unidentified if he was "convicted elsewhere," "a source," or "listed" in another "case, but fully identified." R.R. further instructed CICCIONE to "triple check" all of the names in the memorandum in "TECS, NADDIS, NCIC, STATE, INS, TRAVEL," which are all confidential law enforcement databases.

42.     CICCIONE did not remove PIEDRAHITA's name from the Dismissal Memo, nor did he edit the document to indicate that PIEDRAHITA was, in fact, identified. On or about March 16, 2011, when CICCIONE was serving as acting Group Supervisor in R.R.'s absence, he sent the Dismissal Memo to the HSI Assistant Special Agent in Charge for Miami, Florida for approval without making the changes as instructed by R.R. The Dismissal Memo was signed by the Special Agent in Charge and sent to the United States Attorney for the Southern District of Florida.

43.     On or about June 16, 2011, PIEDRAHITA's associate, I.M., e-mailed CICCIONE copies of passports belonging to PIEDRAHITA and PIEDRAHITA's wife.

44.     On or about June 20, 2011, CICCIONE sent an e-mail with the subject line, "Operation Cornerstone," to Assistant United States Attorney F.T. In the e-mail, CICCIONE requested a status on the dismissal of the defendants from The Operation Cornerstone Indictment #93-470. CICCIONE falsely advised F.T. that his DEA counterpart, Special Agent D.H., concurred, and that the original ICE case agent, E.K., "stated that he was never able to fully identify the individuals indicted," and that no arrest warrants were issued.

45.     On or about June 21, 2011, Assistant United States Attorney F.T. responded to CICCIONE. F.T. informed CICCIONE that F.T. was "not familiar with any requests for dismissal submitted any time recently," but that if CICCIONE could provide defendant's names and case numbers, F.T. could check the status.  On the same day, CICCIONE responded, attaching the March 21, 2011 Dismissal Memo and falsely reiterating that: (1) none of the individuals in the memo had arrest warrants, (2) the original case agent was not able to identify the individuals during the course of the investigation, and (3) no one could obtain probable cause to "supersede another indictment." F.T. agreed to forward the case through his chain of command at the U.S. Attorney's Office.

46.     On or about June 24, 2011, CICCIONE forwarded I.M.'s e-mail containing PIEDRAHITA's passport to HSI Special Agent E.E.  Also on or about June 24, 2011, CICCIONE sent E.E. a completed package for a Significant Public Benefit Parole for PIEDRAHITA and his family for processing by E.E. The forms falsely stated that (1) they were prepared by E.E. and (2) no records of criminal activity were located in any databases for PIEDRAHITA.

47.     On or about August 16, 2011, E.E. emailed HSI Special Agent N.E. of the Law Enforcement Parole Unit that El Paso Intelligence Center database record checks confirmed that PIEDRAHITA had an "open and active case in Colombia."  E.E. wrote that although DEA listed PIEDRAHITA as a fugitive no warrants were ever obtained for him.  E.E. told N.E. that Special Agent E.K. stated that individuals like PIEDRAHITA "held insignificant lower level positions within the organization or that he was not able to fully identify."  E.E. received this false information sent to N.E. from CICCIONE.

48.     On or about August 17, 2011, CICCIONE conducted a law enforcement database query for PIEDRAHITA, which returned the following results in the following databases:

a.      NADDIS (Narcotics and Dangerous Drug Information System): "Record indicates that the subject is ARMED AND DANGEROUS and that he is also a FUGITIVE"

b.      TECS: "ALLEGED COCAINE SUPPLIER"

c.      EPIC (El Paso Intelligence Center): indicated that PIEDRAHITA had been queried as part of multiple drug investigations.

49.     On or about September 30, 2011, HSI Special Agent P.H., the Section chief of the Law Enforcement Parole Unit, informed HSI Special Agent N.E. that DEA did not concur with CICCIONE's request for a Significant Public Benefit Parole for PIEDRAHITA. N.E. forwarded the response to CICCIONE. On or about that same day, CICCIONE responded to N.E., falsely stating that: (1) he had discussed the matter with his DEA counterpart, Special Agent D.H., (2) D.H. concurred with the decision to allow PIEDRAHITA to come to the United States to "work as a CI [confidential informant]", and (3) D.H. knew that the NADDIS record indicating that PIEDRAHITA was a fugitive was "made in error."

50.     On or about October 21, 2011, as a result of CICCIONE's repeated efforts and the resulting motion of the United States Attorney's Office, U.S. District Judge William M. Hoeveler dismissed the charges in Indictment #93-470 against 18 defendants, including PIEDRAHITA.

51.     On or about October 25, 2011, CICCIONE emailed VELASCO a copy of the Order of Dismissal from his personal email address.

52.     On or about October 28, 2011, CICCIONE emailed HSI Special Agent P.H., the Section chief of the Law Enforcement Parole Unit, and stated that he spoke with DEA Special Agent D.H. about a parole for PIEDRAHITA on two separate occasions. CICCIONE falsely told P.H. that Special Agent D.H. found NADDIS records for PIEDRAHITA, but concluded "there must have been a subject record error." CICCIONE also falsely stated that he communicated with retired

HSI SA E.K. about PIEDRAHITA and E.K. told him that there was never enough evidence and

he was never able to identify PIEDRAHITA and others in order to obtain arrest warrants.

 All in violation of Title 18, United States Code, Section 371.

**COUNTS TWO THROUGH FIVE**
**Honest Services Fraud**
**(Title 18, United States Code, Sections 1343, 1346, 2)**

53.     The allegations contained in paragraphs 1 through 52 of this Indictment are re-alleged and

incorporated by reference as though fully set forth herein.

54.     On or about each of the dates listed below, in the Southern District of Florida and

elsewhere, the defendants,

> **[1] CHRISTOPHER V. CICCIONE, II,**
> **[2] JOSE BAYRON PIEDRAHITA-CEBALLOS, a/k/a "Cacheton,"**
> **a/k/a "Montanero,"**
> **[3] JUAN CARLOS VELASCO CANO, a/k/a "Cabezon,"**

devised and intended to devise a scheme and artifice to defraud and deprive the United States and

its citizens of their right to the honest services of CHRISTOPHER V. CICCIONE, II, a federal law

enforcement officer, through bribery.

55.     On or about the dates listed below, in the Southern District of Florida and elsewhere,

defendants, aiding and abetting one another, for the purpose of executing the above-described

scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by means of

wire and radio communication in interstate commerce, writings; that is, they caused the following

electronic mail messages to be transmitted via interstate commerce:

| <u>Count</u> | <u>Date</u> | <u>Electronic Mail Transmission</u> |
|---|---|---|
| 2 | June 16, 2011 | E-mail message from I.M. to CICCIONE, which transmitted the passport belonging to PIEDRAHITA pursuant to instructions by VELASCO and CICCIONE. |
| 3 | June 21, 2011 | E-mail message from CICCIONE to Assistant United States Attorney F.T., which attached the Dismissal Memo that falsely stated that none of the defendants on the Dismissal Memo, including PIEDRAHITA, were identified during the course of the investigation. |
| 4 | June 24, 2011 | E-mail message from CICCIONE to HSI Special Agent E.E., which transmitted a completed copy of a DHS Significant Public Benefit Parole Authorization Form for PIEDRAHITA with false statements that he had "no records of criminal activity" and name checks were completed in six specific law enforcement databases for processing by E.E. |
| 5 | October 28, 2011 | E-mail message from CICCIONE to HSI Special Agent P.H., the Section chief of the Law Enforcement Parole Unit, which stated that CICCIONE spoke with DEA Special Agent D.H. about a parole for PIEDRAHITA on two separate occasions. CICCIONE falsely told P.H. that Special Agent D.H. found NADDIS records for PIEDRAHITA, but concluded "there must have been a subject record error." CICCIONE also falsely stated that he communicated with retired HSI Special Agent E.K. about PIEDRAHITA and E.K. told him that there was never enough evidence and he was never able to identify PIEDRAHITA and others in order to obtain arrest warrants. |

Each count a separate and distinct violation of Title 18, <u>United States Code</u>, Sections 1343 and 1346.

## COUNT SIX
### Obstruction of the Due Administration of Justice
### (Title 18, United States Code, Sections 1503, 2)

56.     The allegations contained in paragraphs 1 through 55 of this Indictment are re-alleged and

incorporated by reference as though fully set forth herein.

57.     From on or about February 8, 2011 to on or about October 21, 2011, in the Southern District

of Florida, the defendants,

> **[1] CHRISTOPHER V. CICCIONE, II,**
> **[2] JOSE BAYRON PIEDRAHITA-CEBALLOS, a/k/a "Cacheton,"**
> **a/k/a "Montanero,"**
> **[3] JUAN CARLOS VELASCO CANO, a/k/a "Cabezon,"**

aiding and abetting one another, did corruptly influence, obstruct and impede and endeavor to

influence, obstruct and impede the due administration of justice in the case of *United States v. Blas*

*Antonio Gonzalez, et. al.*, Case No. 93-470 in the United States District Court for the Southern

District of Florida, by using a series of materially false statements, representations, and omissions

about the investigation to persuade the United States Attorney's Office to dismiss the indictment

against PIEDRAHITA, in violation of Title 18, United States Code, Sections 1503 and 2.

### NOTICE OF CRIMINAL FORFEITURE
### (Title 18, United States Code, Section 981)

58.     The allegations contained in paragraphs 1 through 52 of this Indictment are re-alleged and

incorporated by reference as though fully set forth herein for the purpose of alleging forfeitures

pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code,

Section 2461.

59.     Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States

Code, Section 2461, the defendant, CHRISTOPHER V. CICCIONE, II, upon conviction of the

offense in violation of Title 18, United States Code, Section 371, set forth in Count 1; conviction

of the offense(s) in violation of Title 18, United States Code, Sections 1343, and 1346, set forth in Counts 2, 3, 4, and 5 the defendants

**[1] CHRISTOPHER V. CICCIONE, II,**
**[2] JOSE BAYRON PIEDRAHITA-CEBALLOS, a/k/a "Cacheton,"**
**a/k/a "Montanero,"**
**[3] JUAN CARLOS VELASCO CANO, a/k/a "Cabezon,"**

shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to said violations. The property to be forfeited includes, but is not limited to, the following:

a.      A sum of money, the amount to be determined, in United States currency representing the total amount of proceeds traceable, directly or indirectly, to the offense(s) in violation of Title 18, United States Code, Sections 371, and 1343 & 1346.

b.      2011 Jeep Wrangler, VIN 1J4BA3H12BL609851.

60.      If any of the property described above, as a result of any act or omission of the defendant:

    a.      cannot be located upon the exercise of due diligence;

    b.      has been transferred or sold to, or deposited with, a third party;

    c.      has been placed beyond the jurisdiction of the court;

    d.      has been substantially diminished in value; or

    e.      has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c). All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461.

A TRUE BILL

FOREPERSON                          DATE

ANNALOU TIROL
Acting Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

By: _____
Luke Cass
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice

By: _____
Jennifer A. Clarke
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice

18

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

CASE NO. _____

v.

[1] CHRISTOPHER V. CICCIONE, II
[2] JOSE BAYRON PIEDRHITA-CEBALLOS
[3] JUAN CARLOS VELASCO CANO

## CERTIFICATE OF TRIAL ATTORNEY*

_____ Defendant. /

**Superseding Case Information:**

**Court Division:** (Select One)

|  |  |  |
|---|---|---|
| X Miami | ____ Key West |  |
| ____ FTL | ____ WPB | ____ FTP |

New Defendant(s)    Yes   X    No ____
Number of New Defendants        3
Total number of counts          6

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No)    Y
   List language and/or dialect    spanish

4. This case will take    5    days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)

   | I | 0  to 5 days | x |
   |---|---|---|
   | II | 6  to 10 days | ____ |
   | III | 11  to 20 days | ____ |
   | IV | 21 to 60 days | ____ |
   | V | 61 days and over | ____ |

   (Check only one)

   | Petty | ____ |
   |---|---|
   | Minor | ____ |
   | Misdem. | ____ |
   | Felony | x |

6. Has this case been previously filed in this District Court?  (Yes or No)    no
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter?    (Yes or No)    No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the District of _____
   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?    Yes _____    No   x

_____
Luke Cass
Court I.D. No. A5502202
Jennifer A. Clarke
  Court I.D. No. A5502203
Trial Attorneys, U.S. Department of Justice

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

<u>PENALTY SHEET</u>

**Defendant's Name**:___ Christopher V. Ciccione, II; Jose Bayron Piedrahita Ceballos; Juan
Carlos Velasco Cano_____

**Case No**:_____

## Count 1

Conspiracy to commit wire fraud and obstruction of justice

18 U.S.C. §371

**Max. Penalty:** Five years imprisonment; three years supervised release; $250,000 fine, $100
Special Assessment

## Counts 2 through 5

Honest Services Wire Fraud

18 U.S.C. §§1343 and 1346

**Max. Penalty:** Twenty years imprisonment; three years supervised release; $250,000 fine, $100
Special Assessment

## Count 6

Obstruction of the Due Administration of Justice

18 U.S.C. §1503

**Max. Penalty:** Ten years imprisonment; three years supervised release; $250,000 fine; $100
Special Assessment

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name**:     Christopher V. Ciccione, II; Jose Bayron Piedrahita Ceballos; Juan Carlos Velasco Cano

**Case No**:

## Count 1

 Conspiracy to commit wire fraud and obstruction of justice

    18 U.S.C. §371

**Max. Penalty:** Five years imprisonment; three years supervised release; $250,000 fine, $100 Special Assessment

## Counts 2 through 5

    Honest Services Wire Fraud

    18 U.S.C. §§1343 and 1346

**Max. Penalty:** Twenty years imprisonment; three years supervised release; $250,000 fine, $100 Special Assessment

## Count 6

 Obstruction of the Due Administration of Justice

    18 U.S.C. §1503

**Max. Penalty:**   Ten years imprisonment; three years supervised release; $250,000 fine; $100 Special Assessment

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

PENALTY SHEET

**Defendant's Name**:____Christopher V. Ciccione, II; Jose Bayron Piedrahita Ceballos; Juan Carlos Velasco Cano_____

**Case No**:_____

### Count 1

  Conspiracy to commit wire fraud and obstruction of justice_____

    18 U.S.C. §371_____

**Max. Penalty:** Five years imprisonment; three years supervised release; $250,000 fine, $100 Special Assessment

### Counts 2 through 5

    Honest Services Wire Fraud_____

    18 U.S.C. §§1343 and 1346_____

**Max. Penalty:** Twenty years imprisonment; three years supervised release; $250,000 fine, $100 Special Assessment

### Count 6

  Obstruction of the Due Administration of Justice_____

    18 U.S.C. §1503_____

**Max. Penalty:**   Ten years imprisonment; three years supervised release; $250,000 fine; $100 Special Assessment